UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DEANNA O., | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )   No. 1:23-cv-00308-JAW |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant | ) |

## REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred in assessing physical limitations attributable to her IBS-D/Crohn's disease and in finding no mental limitations. *See* Plaintiff's Brief (ECF No. 10) at 6-17. I discern no reversible error and recommend that the Court affirm the Commissioner's decision.

### I. Background

The ALJ found, in relevant part, that the Plaintiff had a severe impairment of IBS-D/Crohn's disease, *see* Record at 32; retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except that she could frequently balance and climb ramps or stairs; occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, or scaffolds; and needed easy access to bathroom facilities that she would need to use approximately two to three times each workday, *see id.* at 34-35; was capable of performing past relevant work as an office clerk and a grocery store manager as well as other work existing in significant numbers in the

1

national economy, *see id*. at 39-41; and therefore had not been disabled from October 31, 2020, her alleged onset date of disability, through the date of the decision, June 27, 2022, *see id*. at 25. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 14-16, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

### A. Bathroom Breaks

The Plaintiff raises several challenges to the ALJ's determination of her need for bathroom breaks. *See* Plaintiff's Brief at 6-11. First, she faults him for failing to explain what he meant by "easy access" to a bathroom. *Id*. at 7-8. She argues that it

is unclear whether he found that a bathroom merely must be available somewhere on the premises or within a certain distance of her workstation. *See id*. at 8. She adds that, given her testimony regarding the urgency of her need to use the bathroom and her incontinence when bathroom access was not possible, it stands to reason that she would need a private bathroom. *See id*. She points out that the vocational expert (VE) who testified at her hearing "did not further clarify what [the VE] interpreted 'easy access' to mean." *Id*. I find no error.

As the Commissioner observes, *see* Commissioner's Brief (ECF No. 14) at 3, the ALJ relied on expert opinions in crafting that limitation. He adopted the opinion of agency nonexamining consultant Elaine Hom, M.D., that the Plaintiff required "easy access to bathroom facilities," which he deemed "consistent with and supported by the objective treatment record, including reports that the [Plaintiff] did well following colectomy surgery, that her bowel movement pattern improves with Imodium (that she only uses when she leaves the house) and after treatment for C. difficile, and with a colonoscopy showing mild active Crohn's." Record at 37. And he agreed with treating physician Corey A. Siegel, M.D., that the Plaintiff required "ready access to a restroom" in the form of "access to a bathroom with the ability to use it multiple times per day[.]" *Id*. at 38, 748-49.

The phrase "easy access" connotes close proximity to a bathroom. *See, e.g., Teresa A. M. v. Saul*, No. 2:19-cv-00292-LEW, 2020 WL 2850224, at *1, *3, *8-9 (D. Me. June 1, 2020) (rec. dec.) (holding that an ALJ did not err in finding that a claimant "should have access to a restroom" when he relied in part on the opinions of

two agency nonexamining consultants that the claimant had "a need for proximity to bathroom facilities" (cleaned up)), *aff'd*, 2020 WL 3963866 (D. Me. July 13, 2020). Indeed, the ALJ reasonably perceived no clash between Dr. Hom's assessment that the Plaintiff required "easy access" to a restroom and that of Dr. Siegel that he needed "a job that permits ready access to a restroom," Record at 748, which the ALJ explained that he had "accounted for" in assessing the Plaintiff's RFC, *id*. at 38.

The Plaintiff falls short of making a persuasive case that the VE needed to clarify what she understood "easy access" to mean. As discussed above, that phrase connotes close proximity to a bathroom. The ALJ specified that the VE should assume that the individual would "need to use those facilities approximately two to three times each workday." *Id*. at 75. And, during cross-examination by the Plaintiff's counsel, the VE clarified that, although the ALJ did not specify "how long the person would be in the bathroom, . . . because it was only two to three times per day, I would interpret that to be within normal work breaks." *Id*. at 80. She noted that the total time off task for two to three bathroom breaks daily would not exceed the total time typically allowed for work breaks ("5 to 10 minutes after 2 hours of work, half hour to 40 minutes after 4 hours of work . . ., [and] 5 to 10 minutes after 6 hours of work") and that the jobs at issue did not impose set times for breaks, which could be taken "at any time in lieu of their normal breaks."[1]

---

[1] The Plaintiff cites *Medellin v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00264-TUC-BPV, 2018 WL 4659214, at *6 (D. Ariz. Sept. 28, 2018), for the proposition that the ALJ's use of the term "easy access" without further definition is reversible error. *See* Plaintiff's Brief at 8. *Medellin* is distinguishable. In that case, "[t]he ALJ's RFC did not include any limitations incorporating [the claimant's] restroom needs[.]" *Medellin*, 2018 WL 4659214, at *4. In addition, "while the ALJ did state that [the claimant] could work if there were restrooms available, he did not reconcile [the claimant's] unexpected, prolonged break time to use the bathroom with the off-task time limits described by the VE." *Id*. at

4

The Plaintiff next contends that the ALJ erred when he credited her testimony that she had up to five bowel movements per day during waking hours yet inexplicably decreased the number of bathroom breaks to between two and three, "leav[ing] the RFC without an accurate and logical bridge." Plaintiff's Brief at 9. I disagree. The ALJ explained that "the need to use the bathroom approximately 2-3 times per day is based on the [Plaintiff's] own reports, made multiple times, of having up to 5 bowel movements per day during waking hours." Record at 38-39. Although he did not expressly state that he had pared the number of breaks to reflect total working hours (eight) rather than waking hours (sixteen), that is implicit in what he did say. And, lest there were a doubt, he elsewhere credited the estimate of treating physician Anthony Fusco, D.O., that the Plaintiff would need to take breaks every two to three hours during an eight-hour workday. *See id*. at 38, 744.[2]

The Plaintiff finally faults the ALJ for failing to quantify the duration of required bathroom breaks, rendering it unclear whether she would be off task for a greater amount of time than the VE testified employers would tolerate. *See* Plaintiff's Brief at 10-11. She asserts that, based on Dr. Fusco's estimate that she required

---

*6. He also "failed to consider the number and length of breaks necessary to use the restroom and how [that] would affect [the claimant's] employability" and "appeared to approximate that [the claimant's] break times" might "extend to up to twenty minutes, well beyond the fifteen percent off-task time discussed by the VE." *Id*. In this case, by contrast, the ALJ specified the frequency with which the Plaintiff required easy access to a restroom during a workday, and the VE explained why that need could be accommodated during the work breaks permitted for the jobs at issue.

[2] The Plaintiff protests that because the ALJ never explained the reduction from five to between two and three breaks, the Commissioner's argument constitutes an impermissible *post hoc* rationalization. *See* Reply Brief (ECF No. 15) at 2. However, rather than offering a new basis for affirmance of the ALJ's decision for the first time on appeal, the Commissioner points out what is implicit in the ALJ's own explanation for his finding. *See* Commissioner's Brief at 6.

breaks lasting ten to fifteen minutes each, it was "possible" that she would need five breaks totaling up to seventy-five minutes daily, exceeding the maximum of fifteen percent of the workday (seventy-two minutes in an eight-hour shift) that the VE testified would be tolerated. *Id*. at 9; Record at 77. This argument hits two roadblocks. First, the ALJ rejected Dr. Fusco's fifteen-minute estimate, explaining, "While [the Plaintiff's] record does support regular access to a bathroom, there is no indication of her needing 15 minute breaks each time." Record at 38; *see also id*. at 744. And second, as discussed above, the ALJ supportably found that the Plaintiff required only two to three breaks in an eight-hour workday. Even assuming three fifteen-minute breaks, the resulting total of forty-five minutes falls well below the seventy-five minutes off task that the VE testified would render a person unemployable. *See id*. at 77.

### B. Omission of Mental Limitation

The Plaintiff next seeks remand on the basis that the ALJ erred in failing to consider whether her nonsevere mental impairment of dysthymic disorder caused functional limitations that should have been accounted for in her RFC. *See* Plaintiff's Brief at 11-17. She argues that the ALJ compounded that error by adopting the opinion of agency examining consultant Donna Gates, Ph.D., that she could manage a mild level of work-related stress but inexplicably rejecting the virtually identical opinion of treating physician Anthony Fusco, D.O., that she could tolerate low-stress jobs. *See id*. at 15-16. I conclude that any error is harmless.

In March 2021, Dr. Gates found that the Plaintiff had no mental health diagnoses and "no clinically significant mental health limitations that are expected to preclude her from working." Record at 585. In that context, she noted that the Plaintiff could "manage a mild level of work-related stress as she is physically able." *Id*. With the benefit of review of the Gates report, agency nonexamining consultant Robert Maierhofer, Ph.D., found that the Plaintiff had no mental health limitations. *See id*. at 92, 94.

In January 2022, Dr. Gates completed a second report, this time diagnosing the Plaintiff with dysthymic disorder. *Id*. at 715, 718. However, she noted that the Plaintiff "would and could work if she were physically able" and could "manage a mild level of work-related stress as she is physically able." *Id*. at 717-18. With the benefit of review of both Gates reports, agency nonexamining consultant Ryan Haggarty, Ph.D., opined that the Plaintiff had no mental health limitations. *See id*. at 100, 104.

Finally, in May 2022, Dr. Fusco completed a physical RFC questionnaire in which he indicated that the Plaintiff was "[c]apable only of low-stress jobs." *Id*. at 743.

The ALJ found the Maierhofer and Haggarty findings and the Gates reports persuasive, characterizing them as consistent with each other as well as with "a treatment record that focuses on [the Plaintiff's] physical functioning" and the Plaintiff's own "self-reporting in her Function Report." *Id*. at 37. While he found certain limitations assessed by Dr. Fusco "mostly persuasive," he deemed the

7

remainder, including Dr. Fusco's limitation to low-stress jobs, "unpersuasive." *Id*. at 38.

Even assuming that Dr. Gates meant to assess a limitation similar to that of Dr. Fusco, any error by the ALJ in mischaracterizing her opinion is rendered harmless by his adoption of the findings of Drs. Maierhofer and Haggarty, who concluded, with the benefit of review of one or both Gates reports, that the Plaintiff had no mental health limitations. *See Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *9 (D. Me. June 11, 2017) (rec. dec.) (deeming an ALJ's failure to articulate the weight given to the report of an agency examining consultant harmless when the ALJ relied on the findings of agency nonexamining consultants who had considered that report), *aff'd*, 2017 WL 2963371 (D. Me. July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019).

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

8

Dated: June 6, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge
